## THOROMAN, Estate of, In Re.

Ohio Appeals, Second District, Montgomery County.

No. 1784.   Decided January 22, 1945.

Joseph W. Sharts, Dayton, for appellant.
Iddings, Jeffrey & Weisman, Dayton, for appellee.

NICHOLS, J., of the Seventh Appellate District sitting by designation in place of Barnes, P. J.

## OPINION

By NICHOLS, J.

This cause is in this court on appeal upon questions of law from the judgment of the Probate Court of Montgomery County in the matter of exceptions filed by appellant as surviving spouse to the first, final and distributive account of the executor.

On motion of appellee, appeal upon questions of law and fact was heretofore dismissed by this court and the cause retained for hearing upon questions of law only.

William E. Thoroman, a resident of Montgomery County, died on September 25, 1941, leaving a last will and testament which was duly admitted to probate, the pertinent provisions of which are as follows:

"First: I give, devise and bequeath to my son, William Cary Thoroman, the property known as Six Hundred Twenty (620) Bellaire Avenue, Dayton, Ohio, * * * the said property to be to him absolutely and in fee simple and his heirs and assigns forever; provided, however, that he or those inheriting said property shall pay my just funeral expenses including a marker for my grave to match the marker already in the burial lot; but said funeral expenses need not exceed $300.00 exclusive of said marker.

"Second: I desire that all my other just debts, if any, shall be paid out of the remaining assets of my estate as soon as reasonably possible after my decease.

"Third: I desire my executor shall convert into money as soon as reasonably possible all my estate not included in the first item above and after paying the debts, if any, provided for by the second item above, shall out of said fund first pay to my wife, Lessie Elsie Thoroman, what the law allows her as my wife. All the rest and residue thereof, I give, devise and bequeath to my remaining children, namely, Marcile Elsie Thoroman and Mary Frances Thoroman and Edgar-Paul Thoroman and Dorothy May Thoroman and Elsie Pauline Gross, share and share alike per stirpes, to them and their heirs and assigns forever."

By item fourth of his will, testator nominated his son, Edgar Paul Thoroman, as executor thereof, authorizing and empowering him to compound, compromise, settle and adjust all claims and demands in favor of or against the estate, and to sell at public or private sale at such prices and upon such terms of credit, or otherwise, as he may deem best, any or all of his real or personal property.

In due course, the executor filed inventory and appraisement of the estate, notice of the time of holding the same having been waived by the surviving spouse. In the inventory and appraisement is shown the following:

Household furniture, _____$ 150.00
Parcel No. 1, being the real estate specifically devised
    by Item first of the will,_____ 5,500.00
Parcel No. 2, consisting of an additional lot, _____ 5,000.00

The total appraised value of the estate, as shown by the inventory and appraisement, including the household goods, is $10,650.00.

Schedule F of the inventory indicates no specific personal property was selected by the widow or set off to her by the appraisers, who certified that she will need in money for her years support the sum of $1,000.00, and that 20% of the total value of the estate was set off to her in the sum of $2,130.00. No exceptions were filed to the inventory and appraisement.

In his first, final and distributive account, to which the exceptions were filed by the widow, the executor charges himself as follows:

Cash on hand at death _____$ 291.76
Cash received from William C. Thoroman, in part
payment for funeral expenses, _____ 300.00
Received from sale of property at 703 Bellaire Ave.,____ 5,000.00
N. C. R. bonus check, _____ 29.22

| | |
|---|---|
| Sale of lot, | 300.00 |
| Furniture and household goods | 150.00 |
| Real estate described in will of deceased as 620 Bellaire Ave., | 5,000.00 |

Total receipts, _____$11,070.98

In the account, the executor takes credit for the sum of $1,348.77 expended in payment of debts of the deceased, including funeral expenses of $667.12, executor's fees $250.00, attorney fees $250.00, and Probate Court costs.

By way of distribution, the executor claimed credit in the amount of $5,000.00 on account of the real estate specifically devised to William Cary Thoroman, and further claimed credit by way of cash distribution as follows:

| | |
|---|---|
| To the widow of deceased, 20% of inventory. | $2,130.00 |
| Widow's year's allowance | 1,000.00 |
| One-third of net estate left for distribution | 530.74 and |
| To each of the children of the deceased, | 212.29, |

thus balancing the receipts and disbursements.

In her amended exceptions to the executor's account, the widow alleges that the account is not true and correct in the following matters:

"(1) It includes as 'Cash on hand at death,' only $291.76, whereas there should have been included $700.00 received from sale of automobile.

"(2) It claims credit for $210.00 paid the widow over the amount of her distributive check ($3450.74) to make up the sum of $3660.74 claimed to have been paid to her as her distributive share, whereas $150.00 of said claimed credit is for furniture taken by her which was her own property, not part of the assets of said estate.

"(3) It figures her set-off of 20% under §10509-54 GC, at only $2130.00, whereas it should be at least $2214.18, and $81.64 additional if the correction be made as to the $700.00 from sale of automobile.

"(4) It figures as '1/3 of net estate left for distribution . . . $530.74,' having first deducted all debts of decedent and also all expenses and fees of administration, whereas said one-third due to widow under the terms of the will and as defined by §10503-4 GC, should be at least $3690.00, or with the correction aforesaid as to the $700.00, $3826.40."

Upon the hearing of these exceptions, the Probate Court found:

"1. The exception relating to 'cash on hand at death' is overruled, the court finding that the testator had on hand $291.76 at his death. If the widow desired to make exceptions to this figure, exceptions should have been taken to the inventory as provided by law. The court cannot now question this figure.

"2. The exception concerning the ownership of household furniture is overruled, the court finding that the testator did own $150.00 worth of furniture at his death and that the widow has taken and acquired all of said household furniture belonging to testator. Again the court cannot question the accuracy of the appraisement. Exceptions should have been taken to the inventory as provided by law.

"3. The exception relating to the twenty per cent (20%) set-off to which the widow is entitled under §10509-54 GC, is sustained in part. The court finds that the inventory showed 'no moneys on hand at death.' In truth and in fact, the testator had on hand at death $291.76, together with $29.22 in the form of an N. C. R. bonus check, making a total of $320.98, moneys on hand, which was not reflected in the inventory of this estate. The executor is ordered to amend the inventory at bar to show this additional $320.98.

"The widow is entitled to twenty per cent (20%) of this additional sum, which is $64.20.

"4. The exception of the widow relating to the construction of the will of testator is overruled. The court finds that the executor's construction of the will is correct. The court finds that the executor's construction of the will as reflected in his final account is correct.

"It is, therefore, hereby ORDERED, ADJUDGED AND DECREED that exceptions of the widow numbered one (1), two (2) and four (4) are overruled, and exception numbered three (3) of the widow is sustained in part. The executor is ordered to amend the inventory at bar to show an additional sum of $320.98 cash on hand at death, and the widow is entitled to twenty per cent (20%) of this additional sum, or $64.20 as her twenty per cent (20%) set-off of the gross estate."

From the evidence taken upon the hearing of the exceptions, as shown by the bill of exceptions before this court, it appears that the testator in his lifetime sold an automobile owned by him for the sum of $700.00 and turned that sum over to the son who had been named as executor in his will,

the apparent purpose being to enable the son to pay expenses incurring by reason of his last illness and, perhaps, to make available to his spouse funds for her sustenance.

Upon considering the evidence thus adduced, the Probate court found that the son had expended for the above purposes all of the $700.00 so turned over to him except the sum of $291.76, being the amount with which the executor charged himself in his account.

The Probate Court further ordered that the inventory and appraisement be amended so as to include the sum of $291.76 as cash on hand at the death of testator. This action of the Probate Court, we are unable to disturb as being against the manifest weight of the evidence.

The Probate Court further found that there had come into the hands of the executor a National Cash Register bonus check in the amount of $29.22, being the amount set forth in the account, and ordered the inventory and appraisement to be further amended so as to incorporate the same. Thus the court ordered the inventory and appraisement increased by the sum of $320.98 and found the widow entitled to 20% of this sum, to-wit, $64.20, in addition to the $2,130.00 shown by the inventory as originally filed. We find no error in this respect.

Complaint is made that the executor deducted from the cash distributed to the widow $150.00, being the appraised value of the household goods as shown by the inventory. Upon hearing of the exceptions, evidence was submitted as to whether the household goods inventoried were the property of the widow or of testator, from which the Probate Court found that such household goods were the property of testator and that the widow had taken and retained possession thereof.

We observe that the executor, in causing the appraisement to be made, did not comply with §10509-47 GC, which requires that each article or item be set down separately, with its value in dollars and cents, distinctly in figures, opposite to the article or item, respectively. However, as heretofore stated, no exceptions were filed by anyone to the inventory and appraisement. Although the household goods were not set off to the widow as a part of her 20% allowance, she had the right to take the same at the appraised value. The court having found that she had in fact taken possession of the household goods and its finding not being contrary to the weight of the evidence, we find no error in the court's refusal to sustain the exception in this connection.

We have thus disposed of all the questions involved in this proceeding except as to the amount to which the widow is entitled upon final distribution.

In the journal entry showing the findings of the Probate Court in the matter of these exceptions, it is merely set forth by the court that it "finds that the executor's construction of the will is correct * * * as reflected in his final account."

Whether the Probate Court was in error requires, of course, a consideration of the provision made for the widow by the will, together with the applicable sections · of the General Code relating to her rights where she has elected to take under the will.

Sec. 10504-64 GC, provides:

"If the surviving spouse elects to take under the will, such spouse shall be thereby barred of all right to an intestate's share of the estate, and shall take under the will alone * * *."

At first impression, it may be thought that there is an inconsistency between the quoted provision of the General Code and the situation presented by the will because of the fact that the will gives to the widow "what the law allows her as my wife," but this inconsistency disappears when consideration is given to the fact that although the will provides that the widow is to receive "what the law allows her as my wife," it qualifies her right to receive such allowance out of a particular fund which remains for distribution after having converted into money all of his estate except that specifically devised in Item First and after the payment out of such fund of testator's debts.

In construing the will of testator, it seems clear that he intended that the widow should have an amount of money upon distribution of his estate which would equal in value the interest which the widow would have taken in his entire estate had he died intestate. Except for the provisions in the will which prescribe the source from which such lawful share of his estate shall be paid, the widow's rights under this will are the same as though decedent had died intestate.

By the provisions of §10503-4 GC, ¶3, it is provided:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary,

except as otherwise provided by law, in the following course:
* * *

"3. If there be a spouse and more than one child, or their lineal descendants surviving, one-third to the spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes."

It seems apparent that the executor, as well as the Probate Court, determined that the last quoted provision governed the amount to which the widow is entitled in this case, since it appears in the account that the widow was given one-third of the fund remaining after payment of the debts, funeral expenses, costs of administration, allowance to the widow for year's support provided by §10509-74 GC, and the 20% allowance provided for in §10509-54 GC, but in computing her one-third interest, the executor as well as the Probate Court refused to take into consideration the value of the real estate specifically devised in Item First of the will. In this we believe both the executor and the court were in error, and that the proper manner by which to compute the interest of the widow is to be arrived at by adding the appraised value of the specifically devised real estate to the amount of cash remaining after having converted the remainder of the estate into money and after having deducted therefrom the debts, funeral expenses, costs of administration, allowance to the widow for year's support and the 20% allowance under §10509-54 GC.

Appellant argues that her share should be determined before making any of the deductions above referred to. In this we do not concur. It seems elemental that distribution of an estate can only be made out of the net estate remaining after payment of the debts, expenses and allowances above referred to, all of which must be deducted before anyone is entitled to a distributive share of an estate.

Sec. 10509-121 GC, expressly enjoins upon the executor to proceed with diligence to pay the debts of the deceased, and indicates the order in which they are to be paid as well as what are considered "debts".

All of the facts necessary to a determination of the amount to which the widow in this case is entitled as her distributive share are before this court, from which we conclude that no moneys of this estate remain for distribution to the children of testator; that the amounts which are shown to have been distributed to the children should have been distributed to the widow; that the Probate Court was in error

in finding upon the exceptions to the account so as to approve the distribution shown therein.

The judgment of the Probate Court is affirmed in part and reversed in part, as hereinbefore indicated, and the cause is remanded to that court for further proceedings in accordance with this opinion.

HORNBECK, P. J., and GEIGER, J., concur.